UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICTOR ALVARES RIVERA, *et al.*,

                    Petitioners,

    v.

JULIO HERNANDEZ, *et al.*,

                    Respondents.

Case No. C26-1738-MLP

ORDER GRANTING HABEAS
RELIEF TO PETITIONERS VICTOR
ALVARES RIVERA AND D.B.C.

Through counsel, Petitioners Victor Alvares Rivera and D.B.C. (collectively, "Petitioners") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that their redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington, violates the Due Process Clause of the Fifth Amendment. (Dkt. # 1.) Respondents filed a return (dkt. # 15), supported by the declaration of ICE Deportation Officer Enrique Rodriguez (dkt. # 16). Petitioners filed a traverse. (Dkt. # 17.) Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 10.)

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 1

## I.   LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## II.   DISCUSSION

### A.   Victor Alvares Rivera

#### 1.   Background

Petitioner Alvares Rivera, a citizen of Bolivia, fled his country due to threats he received. (Alvares Rivera Decl. (dkt. # 2), ¶ 1.) He entered the United States on June 19, 2024, with his partner and child and turned himself in to authorities. (*Id.*, ¶ 2; Rodriguez Decl., ¶ 4.) He was issued a Notice to Appear ("NTA") charging him as removable and released on an Order of Release on Recognizance ("OREC"). (Rodriguez Decl., ¶¶ 5-6.)

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 2

On October 7, 2024, Petitioner Alvares Rivera was enrolled in Alternative to Detention ("ATD"). (Rodriguez Decl., ¶ 7.) He states in his declaration that he attended all in-person appointments, was present for every home visit, and complied with ATD requirements to the best of his ability, although he experienced repeated technical difficulties with the mobile phone application. (Alvares Rivera Decl., ¶¶ 4, 8.) He kept immigration officers informed of his technical difficulties and even purchased a new phone in April 2026 in an attempt to resolve them. (*Id.*) Officer Rodriguez states in his declaration that an ATD contractor documented 28 violations between November 5, 2024, and April 29, 2026. (Rodriguez Decl., ¶ 8.)

On April 30, 2026, Petitioner Alvares Rivera attended a scheduled check-in and was redetained. (Alvares Rivera Decl., ¶ 9; *see* Rodriguez Decl., ¶ 9.)

On May 27, 2026, an Immigration Judge ("IJ") denied Petitioner Alvares Rivera's applications for relief and ordered him removed to Bolivia. (Rodriguez Decl., ¶ 11.) On June 23, 2026, he timely filed an appeal. (Dkt. # 25 at 1.) His removal proceedings therefore remain pending, and his removal order is not final. (*Id.*)

### 2.    Detention Authority

Detention of noncitizens is governed by 8 U.S.C. §§ 1225-26. In *Jennings v. Rodriguez*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." 583 U.S. 281, 287-88 (2018). Section 1226(a) provides the "default rule" allowing discretionary detention of noncitizens "already present in the United States," with enumerated exceptions for mandatory detention (*see* § 1226(c)). *Id.* at 303. The Ninth Circuit has also described § 1226 as "provid[ing] the general

process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz*, 53 F.4th at 1196.

Section 1225, by contrast, applies to an "applicant for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1).

Respondents assert they have detained all Petitioners pursuant to the mandatory detention authority of 8 U.S.C. § 1225(b). (Dkt. # 15 at 1-5.) They do not, however, offer any argument that § 1225(b) applies to any of the Petitioners, but instead state that the Department of Homeland Security's ("DHS") "prior practice of OREC releases for applicants for admission does not mean that those [noncitizens] are no longer applicants for admissions." (Dkt. # 15 at 5.) There is no dispute that Petitioners are applicants for admission as defined in § 1225(a). This Court and others throughout the country have held, however, that noncitizens already present in the United States are not "seeking admission" under § 1225(b) and thus mandatory detention does not apply. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025) (applying statutory canons to determine that § 1225(b) does not apply to noncitizens not inspected on arrival but later apprehended); *Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5, 7 (W.D. Wash. Nov. 26, 2025) (applying reasoning in *Rodriguez* to hold that § 1225(b) does not apply to noncitizens—as here—apprehended upon arrival, released on OREC, and later redetained); *see also Barbosa da Cunha v. Freden*, 2026 WL 1146044, at *7 (2d Cir. Apr. 28, 2026) ("applicant for admission" and noncitizen "seeking admission" cannot be equated); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (same); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 2026 WL 1243395, at *9 (11th Cir. May 6, 2026) (same).

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 4

Respondents' own evidence supports the conclusion that Petitioner Alvares Rivera is detained pursuant to § 1226(a), not § 1225(b). He was released on an OREC and, while Respondents do not provide the document, such orders are issued under the authority of § 1226(a). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *see also* dkt. # 15 at 4 (an OREC is issued pursuant to § 1226(a)). Petitioner was released under § 1226(a), thereby acquiring a protected liberty interest subject to due process protections. Furthermore, "[s]tatutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026).

3.	*Due Process*

Respondents concede that, even where release violations are alleged, the Court has applied the *Mathews* factors to determine that pre-deprivation notice and a hearing were required for petitioners in factually similar circumstances. (Dkt. # 15 at 14.)

For the reasons explained in *E.A. T.-B. v. Wamsley*, this Court concludes that Petitioner Alvares Rivera's due process rights were violated when he was detained for alleged ATD violations without pre-deprivation notice and a hearing. 795 F. Supp. 3d at 1321-24. As Respondents acknowledge, Petitioner Alvares Rivera's release on an OREC required the government to determine that he was not a flight risk nor a danger, and established a protected liberty interest. (*See* dkt. # 15 at 4 (discretionary release is available under § 1226(a) only if the noncitizen "demonstrates that he 'would not pose a danger to property or persons' and 'is likely to appear for any future proceeding.'" (quoting 8 C.F.R. § 236.1(c)(8))).) The risk of erroneous deprivation was high where he had no opportunity to address what appear to be solely technical

difficulties rather than intentional violations. *See E.A. T.-B.*, 795 F. Supp. 3d at 1322 ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

These factors weigh strongly in Petitioner's favor, while "the Government's interest in re-detaining non-citizens previously released without a hearing is low[.]" *E.A. T.-B.*, 795 F. Supp. 3d at 1324. In sum, all three *Mathews* factors favor Petitioner Alvares Rivera, and habeas relief is warranted.

Respondents argue that Petitioner Alvares Rivera's 28 ATD violations constitute "material changes in circumstances" justifying redetention and that the appropriate relief is to order a post-deprivation hearing. (Dkt. # 15 at 14-15.)

Ordering a post-deprivation hearing may be appropriate where exigent circumstances made pre-deprivation process impracticable. *See, e.g.*, *Quinonez Torres v. Hermosillo*, 2026 WL 547591, at *6 (W.D. Wash. Feb. 23, 2026). Here, however, Respondents have not articulated what about the alleged violations required redetention without notice and an opportunity to respond, and they do not argue that the violations evidenced flight risk or danger. The alleged ATD violations appear technical in nature and, given that they began over a year before Petitioner was redetained, did not spur the government to prompt action. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *see also, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 6

**B.    D.B.C.**

*1.    Background*

Petitioner D.B.C., a citizen of Colombia, fled his country due to death threats. (D.B.C. Decl. (dkt. # 3), ¶ 1.) On October 12, 2023, he entered the United States and turned himself in to authorities. (*Id.*, ¶ 2; Rodriguez Decl., ¶ 15.) While he was initially processed for expedited removal, U.S. Citizenship and Immigration Services made a positive credible fear determination and he was issued an NTA charging him with removability. (D.B.C. Decl., ¶ 2; Rodriguez Decl., ¶¶ 16-17.) On November 24, 2023, Petitioner D.B.C. was released with an ankle monitor on humanitarian parole for one year, pursuant to 8 U.S.C. § 1182(d)(5), and enrolled in ATD. (D.B.C. Decl., ¶ 2; Rodriguez Decl., ¶ 18.)

Petitioner D.B.C. moved to Seattle, worked to recover from trauma he had experienced, applied for asylum and a work permit, and eventually found a partner with whom he is raising two children. (D.B.C. Decl., ¶¶ 3-6, 12.) He updated his address with ICE whenever he moved, attended monthly in-person check-ins and periodic home visits or phone calls, and complied with all other requirements to the best of his ability, although his ankle monitor malfunctioned and had to be replaced repeatedly. (*Id.*, ¶¶ 7-8.) He acknowledges that he missed an in-person check-in in 2024, when he was suffering mentally and emotionally and had lost track of the days, and a home visit in October 2025 when he answered the phone call but did not know he was supposed to be at home during the call. (*Id.*, ¶¶ 9, 11.) His next visits were successful without issue. (*Id.*) His last home visit, on April 8, 2026, was successfully completed, and his next was scheduled for May 2026. (*Id.*, ¶ 12.)

On April 24, 2026, Petitioner D.B.C. reported for an in-person check-in, which proceeded normally and his ankle monitor was replaced yet again. (D.B.C. Decl., ¶ 13.) As he was leaving,

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 7

immigration officers detained him and refused to tell him why. (*Id.*) Officer Rodriguez states in his declaration that Petitioner D.B.C. was detained because an ATD contractor documented 25 violations between approximately June 2024 and December 2025 for "failed virtual home visits, missed biometric check-ins, low battery issues, and missed callbacks where Petitioner's tracker was no longer calling in." [2] (Rodriguez Decl., ¶¶ 19-20.)

On May 29, 2026, the IJ denied asylum and ordered Petitioner D.B.C. removed to Colombia. (Rodriguez Decl., ¶ 21.) On June 29, 2026, however, the IJ ordered his removal proceedings reopened, and they are therefore ongoing. (Dkt. # 25 at 1-2.) Accordingly, Petitioner's removal order is no longer in place. (*Id.*)

> ### 2.    *Detention Authority*

The sole exception to mandatory detention under 8 U.S.C. § 1225(b) is discretionary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. Regulations require that parolees "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). A grant of parole therefore reflects a determination that (1) urgent humanitarian reasons or significant public benefit justify release and (2) the person is not a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole may terminate automatically upon the individual's departure from the United States or "at the expiration of the time for which parole was authorized" without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it may be terminated if the purpose of parole has been accomplished or if an authorized DHS official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C

---

[2] Petitioner D.B.C. reported to ICE that he was charged with shoplifting in February 2024 and the charge was dismissed in May 2025, nearly a year before he was redetained. (D.B.C. Decl., ¶¶ 10-11.) Neither Respondents nor Officer Rodriguez mention any criminal charge or cite it as a reason for redetention.

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 8

§ 1182(d)(5)(A). In those circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Continued detention thus must rest on an individualized assessment; otherwise, renewed parole is required.

Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was effectively continued beyond the stated expiration date. In that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *See Telenchana*, 2026 WL 696806, at *7; *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

Here, Petitioner D.B.C. was paroled on November 24, 2023, for a period of one year. Parole was effectively continued, however, because the government permitted him to remain on release for seventeen months after the nominal end date and continued to process his asylum application. Under these circumstances, redetention was authorized only upon a discretionary decision by an appropriate official, and Petitioner D.B.C. was entitled to written notice prior to redetention.

3.    *Due Process*

Petitioner D.B.C.'s interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). During the more than two years he was at liberty, he found a partner and began raising a family, worked, and applied for asylum. The first *Mathews* factor weighs in his favor.

When Petitioner D.B.C. was granted parole, the government necessarily determined that he was not a flight risk or danger. Respondents identify no change in that determination. Moreover, Petitioner D.B.C. was entitled to written notice and did not receive it. "The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained." *Dieng*, 2026 WL 411857, at *8 (internal citations omitted). The second *Mathews* factor weighs in Petitioner D.B.C.'s favor.

Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger or flight risk—that would make pre-deprivation process impracticable.

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 10

In sum, the *Mathews* factors strongly favor Petitioner D.B.C. Habeas relief is therefore warranted. Respondents argue that his 25 ATD violations constitute materially changed circumstances justifying only post-deprivation relief. (Dkt. # 15 at 14-15.) They do not explain how violations that began nearly two years before Petitioner D.B.C. was redetained and that appear technical or otherwise unintentional gave rise to exigent circumstances rendering pre-deprivation process impracticable. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy.

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part Petitioners' petition for writ of habeas corpus (dkt. # 1) with respect to Petitioners Victor Alvares Rivera and D.B.C. Within **twenty-four (24) hours**, Respondents shall release Petitioners Rivera and D.B.C. from immigration detention under conditions consistent with applicable statutory and regulatory authority; and within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioners' release.

Dated this <u>2nd</u> day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER GRANTING HABEAS RELIEF TO
PETITIONERS VICTOR ALVARES RIVERA AND
D.B.C. - 11